UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

SHERRY WOODARD,
on behalf of minor child, R.W.,

       Plaintiff,

  v.

COMMISSIONER OF SOCIAL SECURITY,

       Defendant.

Case No. 1:13-cv-116

Barrett, J.
Bowman, M.J.

**REPORT AND RECOMMENDATION**

Plaintiff Sherry Woodard filed this Social Security appeal in order to challenge the Defendant's finding that her minor child (hereinafter "RW") is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents a single claim of error for this Court's review. As explained below, I conclude that the ALJ's finding of non-disability should be AFFIRMED, because it is supported by substantial evidence in the administrative record.

**I.  Background and Judicial Standard of Review**

In September of 2009, Plaintiff filed an application for Supplemental Security Income (SSI) on RW's behalf, alleging a disability due to learning and behavioral problems, primarily attention deficit hyperactivity disorder ("ADHD")(Tr. 121), with an onset date of September 1, 2008.[1] At the time Plaintiff filed the SSI application for her

---

[1] SSI benefits may not be awarded for any period prior to the month in which the claimant filed an application. *See* 20 C.F.R. §§415.330, 416.335. Thus, the relevant disability period is the month in which his mother filed his application (September 2009) through the date of the ALJ's decision. *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1244 (6th Cir. 1993).

son, RW had just turned seven years old. After the application was denied initially and upon reconsideration, Plaintiff requested a hearing *de novo* before an Administrative Law Judge ("ALJ"). On June 1, 2011, an evidentiary hearing was held, at which Plaintiff appeared, represented by counsel, and gave testimony. On June 22, 2011, ALJ Kenneth Wilson denied the SSI application in a written decision. (Tr. 15-27).

To be eligible for benefits, a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §1382c(a). An individual under the age of eighteen will be considered to be under a disability if the child has a medically determinable impairment which results in marked and severe functional limitations, and which can be expected to result in death, or which has lasted, or can be expected to last, for a continuous period of not less than 12 months. *See* 42 U.S.C. §1382c(a)(3)(C)(i). The implementing regulations define the standard of "marked and severe functional limitations" in terms of "listing-level severity." *See* 20 C.F.R. §§416.902, 416.906, 416.924a, 416.926.

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. . .. The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for supplemental security income by a person under the age of 18, the Social Security Agency is guided by a three-step sequential benefits analysis. In this case, the first two steps of that analysis are uncontested. At Step 1, the Commissioner asks if the claimant is performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe." Given that RW was just eight years old on the date of the decision, he had never engaged in substantial gainful activity. The ALJ further determined that RW has the severe impairments of ADHD, a reading disorder, and a math disorder. (Tr. 18). Also at Step 2, the ALJ noted that RW had a history of behavioral problems and obesity, although he did not find either of those conditions to constitute a severe impairment.

At Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments. *See* 20 C.F.R. §416.924a. The ALJ concluded that none of RW's impairments, alone or in combination, met or medically equaled a Listed Impairment that would entitle RW to a presumption of disability. Based upon the child's IQ scores as well as his diagnosis of ADHD, the ALJ specifically considered Listings 112.11 for ADHD and 112.06 for mental retardation. (*Id.*). The sole focus of Plaintiff's appeal to this Court is on Step 3; specifically, the ALJ's conclusion that RW does not meet or equal a Listing.[2]

---

[2]Plaintiff does not specify the precise Listing for which a finding of functional equivalence is sought, but the undersigned assumes it to be the ADHD Listing.

3

A claimant can medically equal a Listing, or can functionally equal a Listing. Plaintiff argues that the ALJ erred in determining that RW did not equal a Listing based upon his functional limitations. To determine functional equivalence, the Commissioner is required to assess the child's functioning in six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. 20 C.F.R. §416.926a(b)(1). To prove that RW has an impairment that is functionally equivalent to a Listing, Plaintiff must show that RW's impairments resulted in "marked" limitations in at least two of the six domains. 20 C.F.R. §416.926a(d).[3]

Here, the ALJ found that RW functionally experiences a "marked" limitation in only one of those domains - acquiring and using information. (Tr. 22). The ALJ determined that RW has "less than marked" limitations in attending and completing tasks, and in interacting and relating with others. (Tr. 23-24). The ALJ further determined that RW has "no limitation" at all in the domains of moving about and manipulating objects, (Tr. 25), in his ability to care for himself, (Tr. 26), or in his health and physical well-being. (Tr. 27). Accordingly, the ALJ determined that RW was not under disability, as defined in the Social Security Regulations, and was not entitled to SSI. (Tr. 27).

The Appeals Council denied Plaintiff's request for review. Therefore, the ALJ's decision stands as the Defendant's final determination. On appeal to this Court, Plaintiff argues that the ALJ erred by failing to find that RW had a "marked" limitation in the

---

[3]Functional equivalence may also be demonstrated if a claimant's limitations are "extreme" in at least one domain, but Plaintiff makes no argument that RW's limitations fall into the "extreme" category in any domain.

4

domain of interacting and relating with others. Had the ALJ determined a "marked" limitation in that second area, RW would have met the functional equivalence standard for a Listing.

## II. Substantial Evidence Analysis

Plaintiff does not challenge the ALJ's conclusion that RW had no limitations at all in three of the six domains. Plaintiff also does not challenge the ALJ's determination that RW had "marked" but not "extreme" limitations in the domain of acquiring and using information, nor does Plaintiff challenge the conclusion that RW had "less than marked" limitations in attending and completing tasks. Plaintiff disputes *only* the ALJ's determination that RW had "less than marked" limitations in the domain of interacting and relating to others. Plaintiff asserts that the ALJ erred by providing insufficient analysis for his conclusion that Plaintiff had "less than marked" limitations in that area.

In reviewing the domain of interacting and relating, the ALJ discussed all relevant standards to evaluate "how well a child is able to initiate and sustain emotional connections with others, develop and use the language of the community, cooperate with others, comply with rules, respond to criticism, and respect and take care of the possessions of others." (Tr. 23, citing 20 C.F.R. §416.926a(i) and SSR 09-5p). The ALJ also accurately noted that "[b]ecause communication is essential to both interacting and relating, this domain considers the speech and language skills children need to speak intelligibly and to understand and use the language of their community." (*Id.*). Based upon a perceived transition between age groups from the time of Plaintiff's application until the ALJ's written decision,[4] when RW had completed the third grade,

---

[4]A preschooler is defined as a child between the ages of 3 and 6. 20 C.F.R. §416.924e. RW had celebrated his 7th birthday at the time Plaintiff filed an application on his behalf, notwithstanding the ALJ's reference to RW as a "preschooler" at that time.

5

the ALJ reviewed specific standards applicable to both preschoolers and school age children. (Tr. 23-24).  Additionally, the ALJ reviewed Social Security regulation 20 C.F.R. §416.926a(i)(3) and SSR 09-5p, which provide examples of limited functioning in the referenced domain may have over a range of ages and developmental periods.  (Tr. 24).

>Ultimately, the ALJ concluded:
>
>The claimant has less than marked limitation in interacting and relating with others.  Claimant was noted to be cooperative (Exhibit 2F) and work well in groups and without disturbing others (Exhibit 16E/16).  However, he was also noted to have some problems with his behavior at home and in school (Exhibits 1F; 7F).

(Tr. 24).  Earlier in the opinion, the ALJ referenced Plaintiff's "history of behavior problems," but pointed out that more recent records showed "that his behavior was improving."  (Tr. 18).  The ALJ also discussed the testimony of Plaintiff's mother, the psychological consultative evaluation of Dr. Norman Berg, school records including teacher evaluations and the evaluation of a school psychologist, and two evaluations performed by Disability Determination Services ("DDS").  (Tr. 20-21).  The ALJ gave "great weight" to the latter two evaluations.  (Tr. 21).

In the course of discussing the record, the ALJ noted RW's mother's testimony that he had "discipline problems at school about two to three times per week for hitting students and problems getting along with other children," but contrasted that with her report that her son "enjoys reading, going to the library, and playing football."  (Tr. 20).  Relevant to the domain at issue, the ALJ pointed out Dr. Berg's opinions that RW's "speech and language were age appropriate," and that RW had been "in regular classes in the third grade," despite "difficulty expressing his thoughts in written and oral forms."  (Tr. 20).  Regarding teacher reports, the ALJ commented that although RW's teacher

6

rated him on April 4, 2011 as "having difficulties in age-appropriate functioning in cognitive, communicative, social and concentration, persistence, or pace," RW's school progress report showed that he had "mostly satisfactory and only two unsatisfactory" marks. (Tr. 21). An IEP dated April 19, 2011 also reflected that RW was "excelling in spelling and reading," and "was becoming a leader in his class." (Tr. 21).

Plaintiff accuses the ALJ of focusing too heavily on evidence that favored his conclusion, and of failing to provide sufficient analysis of contrary evidence. For example, Plaintiff alleges the ALJ "omit[ed] discussion of Dr. Berg's consultative examination, both teachers' questionnaires, and records from Plaintiff's treating physician at Crossroads," all of which, in Plaintiff's view, support a finding of "marked" limitation in the interacting and relating domain. (Doc. 9 at 8-9). As discussed above, however, the ALJ did not entirely "omit" discussion of Dr. Berg's evaluation or of other relevant evidence.

On the other hand, it is true that the ALJ did not specifically discuss the one sentence in Dr. Berg's report that opined that RW's "social and emotional skills" were "2/3 age-appropriate." (Tr. 246). As Plaintiff notes, the regulatory scheme provide that when a child is extremely young (from birth to age 3) and is deemed to function in more than one-half but not more than two-thirds of his chronological age in a particular area, he is said to have a "marked" impairment in that domain. 20 C.F.R. §415.926a(e)(2)(ii). Thus, had RW been an infant or toddler under the age of 3, rather than 7 to 8 years old, Dr. Berg's "two thirds" opinion would have supported a "marked" limitation in the area of interacting and relating.

Plaintiff suggests the same regulation "may" apply to preschoolers. For preschoolers ranging from 3 to 6 years of age, Plaintiff cites 20 C.F.R. §416.924e as

7

stating that it "may" be appropriate to evaluate the level of severity in terms of developmental age, as opposed to chronological age. The relevant regulation concerning age categories in children,[5] however, explains that the use of age in determining functional equivalence means chronological age "[e]xcept in the case of certain premature infants." 20 C.F.R. §416.924b(a). There is no evidence that RW was a premature infant, such that he should be viewed as possessing the developmental age of a younger child. In any event, Plaintiff does not claim that RW, at age 7 when the application was filed, possessed the developmental age of a child younger than 3 years.

Plaintiff concedes that the regulation has no express application to a school age child. Based upon RW's age, then, the regulation does not imply that a "two-thirds age appropriate" finding in the area of social and emotional skills should result in a "marked" limitation in interacting and relating to others. Notably, Dr. Berg also opined that Plaintiff was "greater than 3/4 age-appropriate" in the closely related area of personal and behavioral patterns, with "interests similar to those of other children his age." (Tr. 246). Dr. Berg never opined that Plaintiff had "marked" limitations in the "interacting and relating" domain. (Tr. 240-251). While recording Plaintiff's report that her son had some behavioral difficulties, described as "mild," (Tr. 246, 247), Dr. Berg also observed that RW was pleasant and cooperative. (Tr. 24, 242-243, 245). Nevertheless, Plaintiff urges this Court to remand in order to require the ALJ to specifically discuss Dr. Berg's assessment of RW's social and emotional skills.

---

[5]Plaintiff's citation to §416.924e is presumed to be a typographical error, as that section number is reserved and contains no current text.

8

Plaintiff also urges remand for further review of the questionnaire from RW's 2009-2010 teacher, Ms. Houser. (Tr. 263-270). On a form that elicited commentary on RW's social and peer relationships, and behavior/emotional observations, Ms. Houser reported that RW is "nasty and mean" to many students and is "always ready to fight." (Tr. 275). However, on a form that asked for specific ratings in thirteen areas relating to the domain of interacting and relating with others, the same teacher indicated that RW had "no problems" in the areas of playing cooperatively with other children, making and keeping friends, seeking attention appropriately, expressing anger appropriately, respecting/obeying adults, or taking turns in a conversation. She rated RW as having only a "slight problem" in the areas of asking permission appropriately, and following rules in the classroom, games and sports. Her most serious ratings of "an obvious problem" were reserved for five discrete areas, but even in those areas, she did not perceive RW as having "serious" or "very serious" problems. (Tr. 266). Ms. Houser further commented that RW "doesn't seem to get so upset when on his medicine." (Tr. 269). She indicated that it had not been necessary to implement any behavior modification strategies. (Tr. 266). Thus, Ms. Houser's report does not support Plaintiff's contention that RW had a "marked" impairment in the domain of interacting and relating with others, but is consistent with the ALJ's determination of "less than marked" impairment in that domain.

RW's teacher for the 2010-2011 school year rated RW as having more serious difficulties. However, even her more severe ratings do not uniformly support a more significant overall limitation than that found by the ALJ. For example, she indicates that RW's speech/language and communications skills are "not a problem" when asked if they adversely affected RW's socialization with his peers. (Tr. 188). In twelve discrete

areas of social functioning in which she was asked to rate RW between a "1" (no problem) and a "5" (very serious detriment to academic or social success), she rated RW only at a "2" in two areas, at the middle-level "3" ("noticeably interferes") in four areas, and at a "4" (still short of the most serious rating) in six areas. (Tr. 188). Yet, she rated RW on his report card as "satisfactory" in most areas. (*Contrast* 207-208). As the Defendant points out, the ALJ did reference teacher reports, but contrasted those with RW's report card, and other school records, such his overall positive IEP report, and a report that RW worked well in groups and without disturbing others, and was becoming a leader in his class. (Tr. 207-208).

Last, Plaintiff points to records from Crossroads, which provide evidence of incidents of "lots of hitting," bullying and fighting, and defiance. However, many of the specific Crossroads records cited by Plaintiff do not support a "marked" limitation in the domain of interacting and relating. For example, two of the cited pages date to when RW was an infant, (Tr. 214-215), while a third describes RW, shortly after beginning treatment for his ADHD, as showing "much improvement in school." (Tr. 216). And, while Plaintiff testified that her son has discipline problems involving hitting other students and getting along with other children two to three times per week, (Tr. 42), she also reported during the SSI application process that RW has friends, can make new friends, generally gets along with adults and teachers, and plays team sports. (Tr. 113). In her report to Dr. Berg, she described RW as only "occasionally" having problems with fighting and/or bullying, which she attributed to end-of-day times "when the medication wears off." (Tr. 240-241). She described RW as having a good relationship with his parents and siblings, and as having friends. (Tr. 241). Although he had more behavioral problems in first grade, Plaintiff indicated that RW's behavior had improved in second

10

grade and Plaintiff reported no "significant behavioral problems in the general community." (*Id.*).

Plaintiff suggests that the ALJ's failure "even to mention" some records requires remand because this Court has no way to determine whether the ALJ's failure to mention each piece of evidence means that it "was not credited or simply ignored." *Steele-Malocu v. Astrue*, Case No. 3:09-cv-383, 2010 WL 4514183 (S.D. Ohio, Sept. 27, 2010). However, the unpublished case on which Plaintiff relies is distinguishable. Remand was required in that case because the ALJ failed to include any discussion of the medical opinion on which he presumably placed great weight. In this case, the ALJ discussed all medical evidence and the weight given to it; he simply did not discuss every sentence of Dr. Berg's opinion.

The Sixth Circuit repeatedly has held that an ALJ is not required to explicitly discuss "every single piece of evidence submitted by a party." *Kornecky v. Com'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 206)(quoting *Loral Defense Systems-Akron v. N.L.R.B.*, 200 F.3d 326, 453 (6th Cir. 1999))(citations and internal quotation marks omitted). The ALJ generally discussed most of the records on which Plaintiff relies and noted discrepancies prior to concluding that RW's had some limitation in the interacting and relating domain, but that it was "less than marked." The ALJ also explicitly relied upon the state agency consultants, who reviewed the record and opined that Plaintiff had less than marked limitations in that domain. (Tr. 21, 254, 294, 297). In fact, no medical source rated RW as having "marked" limitations in that area.

The undersigned can agree that the ALJ's explicit discussion of the domain might have benefitted from greater detail concerning the discrete pieces of evidence on which Plaintiff relies. However, the ALJ also did not discuss every piece of evidence that

11

supported his conclusion that Plaintiff had "less than marked" limitations in the interacting and relating domain. Even if he did not specifically distinguish each and every snippet of evidence that might support a greater limitation, the ALJ provided sufficient discussion for this Court to review, understand, and affirm his decision as supported by substantial evidence. Thus, Plaintiff demonstrates no reversible error.

### III. Conclusion and Recommendation

For the reasons explained herein, **IT IS RECOMMENDED THAT** Defendant's decision be found to be **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and **AFFIRMED**, and that this case be **CLOSED.**

                                          _/s Stephanie K. Bowman_
                                          Stephanie K. Bowman
                                          United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| SHERRY WOODARD,<br>on behalf of minor child, R.W., | Case No. 1:13-cv-116 |
| Plaintiff, | Barrett, J.<br>Bowman, M.J. |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**NOTICE**

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).